Arnold L. Fein, J.
On this application by petitioners C.M.I. Clothesmakers, Inc., and Benson & Partners, Ltd., for an order pursuant to CPLR 7503 (subd [b]) staying arbitration demanded by respondent A.S.K. Knits, Inc., the central issue is whether the parties agreed to submit disputes to arbitration.
Respondent, a textile converter, contends that C.M.I., a manufacturer, ordered a substantial quantity of greige goods from A.S.K. Respondent asserts that the agreement is embodied within the terms of a contract for the sale of such goods, dated September 23, 1974. The contract, which embodies the terms on the reverse side, including provisions for arbitration, provides that it shall become binding "a) when signed by Buyer, or b) when Buyer receives and retains this contract without objection for ten days, or c) when Buyer has paid for or accepted delivery of all or any part of the merchandise ordered hereunder, or d) when Buyer has otherwise manifested its consent.” A.S.K. asserts that it accepted C.M.I.’s order for goods and forwarded its finished goods contract No. 1509, referred to by C.M.I. as "the unsigned written confirmation of oral orders.” Furthermore, A.S.K. claims that a portion of the goods ordered was finished as required and shipped to petitioner during October of 1974. The shipments are evidenced by invoices submitted in opposition to the application for a stay of arbitration.
Petitioners, in support of the application, claim that there *464 was no agreement to arbitrate disputes, and that their admitted retention of the written confirmation for more than 10 days does not effect a binding agreement to arbitrate such disputes; despite the provisions of subdivision (2) of section 2-201 of the Uniform Commercial Code. C.M.I. asserts that the arbitration clause in the contract does not control for the reason that it was not signed by C.M.I. and amounts to a "material alteration” within the. terms of subdivision (2) of section 2-207 of the Uniform Commercial Code. The retention of a confirmation between merchants for njore than 10 days invalidates any purported defense of Statute of Frauds (Uniform Commercial Code, § 2-201 subd 2). However, it does not relieve the party from establishing the existence of a contract to arbitrate.
Pursuant to subdivision 2 of section 2-201, where a confirmation is sent "between merchants,” and "the party receiving it has reason to know its contents,” the Statute of Frauds defense is unavailable "unless written notice of objection to its contents is given within ten days after it is received.” It is undisputed here that no written objection was given by petitioners. They contend, however, that the arbitration provision is a material alteration of their oral agreement and, pursuant to section 2-207 of the Uniform Commercial Code, is no more than a proposal for an addition to the contract which, by C.M.I.’s silence, was not accepted.
Petitioners’ contention lacks merit in the face of the phrase "had reason to know its contents” embodied within subdivision 2 of section 2-201. There is "an underlying implicit association between the existence of a trade practice to arbitrate and a party’s reason to know the contents of a written confirmation containing an arbitration clause.” (Matter of Wolfkill Feed & Fertilizer Corp. [International Commodities Export Co.], NYLJ, May 16, 1975, p 16, col 4.)
Although the public policy of this State favors a liberal policy of promoting arbitration of commercial disputes (Matter of Grayson-Robinson Stores [Iris Constr. Corp.] 8 NY2d 133), an intention to arbitrate must be expressed clearly, so as to warrant an inference that the parties intended and agreed to surrender their right to resort to the courts (Matter of Riverdale Fabrics Corp. [Tillingshast-Stiles Co.] 306 NY 288; Matter of Princeton Rayon Corp. [Gayley Mill Corp.] 309 NY 13).
It is "almost” a matter of "judicial notice, that arbitration clauses are commonly used in the textile industry” (Matter of *465 Helen Whiting, Inc. [Trojan Textile Corp.], 307 NY 360, 367; Trafalgar Sq. v Reeves Bros., 35 AD2d 194, 197; Loudon Mfg. v American & Efird Mills, 46 AD2d 637, 638). Judicial recognition of this common practice in the textile field warrants a finding that the merchant had "reason to know” that an arbitration clause would be and was included within the written confirmation (Matter of Wolfkill Feed & Fertilizer Corp., supra; see Matter of Kornblum Metals Co. v Instel Corp., 47 AD2d 523).
In the light of the common practice in the industry to include arbitration provisions in written confirmations between merchants and the inclusion of such arbitration clause in the confirmations sub judice it was incumbent upon petitioners who received the written confirmation to examine it and to make timely objection to the allegedly unauthorized arbitration clause.
It is undisputed that no timely objection was made by the petitioners. Moreover, they do not dispute the delivery of the goods in accordance with their instructions, as evidenced by A.S.K.’s invoices. Nor did petitioners reject the goods which had been shipped within a reasonable time after tender. Instead they attempted to cancel the balance of the contract some time after their acceptance of the initial shipments and after the remaining goods had been prepared and were ready to be shipped.
Accordingly, petitioner’s application to stay arbitration is denied and the parties are directed to proceed to arbitration.