[Civ. No. 33420. Fourth Dist., Div. Two. Apr. 24, 1985.]

THERMA-COUSTICS MANUFACTURING, INC.,
Plaintiff and Appellant, v.
BORDEN, INC. et al., Defendants and Respondents.

COUNSEL

Dawson & Ninnis and Jeffrey H. Smith for Plaintiff and Appellant.

McCutchen, Black, Verleger & Shea, Howard J. Privett and Cheryl D. Chadwick for Defendants and Respondents.

OPINION

**McDANIEL, J.**—This appeal presents for the first time in this state an occasion to interpret section 2207 of the California Uniform Commercial Code (*infra*) as it operates to permit an offeree seller to accept an offer to purchase on terms not contained in the offer, which are yet binding on the offeror buyer, provided such terms do not represent a "material alteration" of the contract. Here the offeree seller's invoices contained a printed limitation of one year within which the buyer could commence an action "under this contract" after such action had accrued. On the facts before it, the trial court ruled that a suit brought by the buyer twenty-one months after all six of its causes of action had accrued, including those for fraud and negligent misrepresentation, was barred by this one-year limitation provision which had become a term of the contract in the manner noted. In our view, the trial court properly ruled on the issues before it, and the judgment of dismissal will be affirmed.

### SYNOPSIS OF THE TRIAL COURT PROCEEDINGS

After Therma-Coustics Manufacturing, Inc., a Texas corporation (plaintiff) filed its initial complaint in the underlying action on March 30, 1979, and after certain intervening pleading maneuvers, it filed its fourth amended complaint for breach of warranty (three counts), fraud, negligent misrepresentation and for declaratory relief. The suit was brought against Borden,

Inc. a Delaware corporation (defendant).[1] The first count, for breach of the implied warranty of fitness for a particular purpose, contained 19 paragraphs. These 19 paragraphs were each incorporated by reference into all the other 5 counts. The prayer asked for $2 million in general damages, for damages for loss of good will and reputation according to proof, for $1 million in exemplary damages on counts 4 (fraud) and 5 (negligent misrepresentation), for a declaratory judgment requiring defendant to defend third-party actions pending against plaintiff and that defendant indemnify plaintiff for any expenditure already made on account of such actions, for attorney's fees in the action, plus costs and other proper relief. In other words, the operative facts pleaded in support of all six counts were essentially the same, except that counts 4 and 5 included the customary vernacular necessary to plead causes of action for fraud and negligent misrepresentation.

In defendant's answer to the fourth amended complaint, it pleaded 16 affirmative defenses, one of which alleged ". . . that plaintiff failed to commence the within action within the one-year limitation period expressly agreed to by the parties in writing."

After the case was at issue, the parties stipulated in writing "that the question of whether, as a matter of law, plaintiff's claims are barred by the applicable statute of limitations on contractual limitations period may, and should, be determined in advance of impaneling a jury to determine the remaining factual issues in respect of the bifurcated trial set for January 30, 1984. [¶] The reason for this stipulated order of proceeding is that if, as defendant contends but plaintiff disputes, the action is time-barred as a matter of law, defendant would be entitled to judgment without the need for further proceedings."

Following this stipulation, which was presented to the pretrial conference, the court made its pretrial conference order which included a recitation that "[t]he parties, through their respective attorneys, have filed a formal stipulation and thereon the court has ordered a bifurcation of the following issues to be tried first in advance of a trial on the merits of plaintiff's underlying claims:

"1. Whether the one year limitation of action and limitation of claim period provisions contained in [defendant's] sales documents are binding on the parties;

---

[1]The complaint also named Richard Hagemeier, an employee of Borden, Inc., as a defendant, and the action as to him was dismissed also.

"2. Whether the disclaimer and product suitability provisions contained on [defendant's] sales documents are binding on the parties;

"3. Whether the indemnity agreement contained in [defendant's] sales documents is binding on the parties;

"4. . . . . . . . . . . . . . . . . . . . . . . .

"5. . . . . . . . . . . . . . . . . . . . . . . .

"6. Whether any of plaintiff's claims are barred by the statute of limitations.

"The parties have agreed, and it is so ordered, that a determination of any one of the issues numbered 1, 2, 3 or 6 above in favor of [defendant] shall entitle [defendant] to judgment and will avoid the need for a further trial on the merits of plaintiff's underlying claim."

With reference to the agreed upon issues of fact, the pretrial conference order included recitations that:

"3. The procedure for all sales of emulsions purchased by plaintiff from [defendant], including all sales of Polyco 2151, was as follows: A representative of plaintiff would telephone [defendant's] facility and place an oral order for a quantity of emulsion at [defendant's] standard price for delivery at plaintiff's facilities in Colton. On several occasions plaintiff would also thereafter send to [defendant] a written purchase order identifying the product to be purchased, stating the quantity required and the place and means of shipment, the price per pound, the date and place of requested delivery.

"4. Plaintiff made at least seventeen purchases of Polyco 2151 between May 1976 and July 1977, inclusive.

"5. Plaintiff's oral and/or written offers to purchase Polyco 2151 did not limit acceptance to their terms.

"6. [Defendant's] sales documents in respect of the first two shipments of Polyco 2151 to plaintiff contained the following limitation of action provision, which constituted a proposal for addition to the contract: " '2. . . . Any action by Buyer hereunder shall be commenced within one year after receipt of said products.'

"7. [Defendant's] sales documents for the last fifteen shipments of Polyco 2151 contained the following limitation of action provision, which constituted a proposal for addition to the contract:

"'CLAIM PERIOD. . . . In no event shall Buyer commence any action under this contract later than one year after the cause of action has accrued.'

"8. On each occasion that plaintiff ordered a shipment of Polyco 2151, [defendant] sent to plaintiff sales documents containing the limitation of action provision discussed in paragraphs 6 and 7 at the same time or shortly after each shipment of Polyco 2151. Plaintiff received each of the foregoing sales documents in due course.

"9. Plaintiff at no time notified [defendant] of an objection to the one-year limitation of action provision contained in [defendant's] sales documents for the sale of Polyco 2151.

"10. On at least 31 occasions from 1973 to 1976 plaintiff purchased various products from [defendant] other than Polyco 2151 (hereinafter 'other products'). The sales documents for each of the other products were sent by [defendant] to plaintiff at the same time or shortly after each shipment of the other products. Plaintiff received each of the foregoing sales documents in due course.

"11. Plaintiff's oral and written offers to purchase other products did not limit acceptance to their terms.

"12. The sales documents for each of the other products were sent by [defendant] to plaintiff at the same time or shortly after shipment of the other products and contained the following limitation of action provision:
"'2. . . . Any action by Buyer hereunder shall be commenced within one year after receipt of said products.'

"13. Plaintiff made no objection to the one-year limitation of action provision contained in the sales documents for the other products.

"14. On several occasions prior to May 1976, representatives of Borden delivered to Gary Thomson[2] material data sheets for various [of defend-

---

[2] It was alleged in plaintiff's fourth amended complaint that Gary Thomson "was the chief executive officer of [plaintiff] and was vested with the primary responsibility for deciding which adhesive emulsion would be used and purchased by [plaintiff], a fact well-known to Defendants and their representatives."

ant's] products, including Polyco 2151. Each of the foregoing data sheets contained the following limitation of action provision: " '2. . . . Any action by Buyer hereunder shall be commenced within one year after receipt of said products.'

"15. Prior to May 1976, George Andrews[3] received a material data sheet for Polyco 2151 containing the following limitation of action provision: " '2. . . . Any action by Buyer hereunder shall be commenced within one year after receipt of said products.'

"16. Prior to May 1976, George Andrews read the conditions of sale contained in the foregoing data sheet for Polyco 2151.

"17. Plaintiff at no time notified [defendant] of an objection to the one-year limitation of action provision contained in any of [defendant's] data sheets."

The recitals of agreed upon facts otherwise extended to 10 pages and covered the texts of extensive disclaimers by defendant on all manner of warranties. These disclaimers were contained on so-called data sheets which were delineated as sales documents in addition to the invoices already noted.

After the pretrial conference, defendant noticed a motion for the date of trial entitled "Motion in Limine for Judgment and to Compel Offer of Proof." In the notice of motion, defendant stated, "This is a motion by [defendant] to establish that [defendant] is entitled to judgment as a matter of law on the issue of the applicable limitations of action period or, alternatively, to require plaintiff to make an offer of proof concerning the issues, if any, which plaintiff seeks to present to the jury concerning the limitations of action question." The notice of motion went on to recite that "[i]f the motion is well taken, the parties agree that [defendant] is entitled to judgment disposing of all of plaintiff's claims and there would be no need to impanel a jury or continue the proceeding further."

Although the notice of motion is explicit in foretelling what plaintiff could expect defendant to present and how or what plaintiff should be prepared to offer in opposition, the actual record of what happened at the hearing and argument of the motion leaves unclear the actual nature and extent of plaintiff's response to such motion, especially in view of the representation by

---

[3]We have meticulously searched the entire record, i.e., the briefs, appellant's appendix on appeal, and the reporter's transcript, and nowhere is George Andrews otherwise identified or even referred to.

plaintiff's counsel at oral argument that he was prevented from making an offer of proof. In plaintiff's written opposition to the motion, it set forth the legal argument that the one-year limitation period could not be applied to its fraud and negligent misrepresentation counts. It set forth the further legal argument that the limitation provision represented a contract of adhesion and hence was unenforceable. It argued that *Aceros Industriales, S.A. de C.V.* v. *Florida Steel* (S.D.N.Y. 1982) 528 F.Supp. 1156, relied upon by defendant, was inapposite. It argued that the one-year limitation period as to the breach of warranty counts amounted to a *material* alteration and hence could not be deemed a part of the sales contracts. Such opposition papers contained no reference whatsoever to matters of fact to be included in a prospective offer of proof, proof which plaintiff might contend to be necessary to provide the court with a sufficient factual predicate upon which to consider the legal issues raised by the motion *in limine.*

That brings the synopsis down to the day the motion was made and argued. Counsel for defendant led off, and then counsel for plaintiff had his turn. After addressing the legal issue of whether plaintiff could be characterized as a "merchant" under applicable provisions of the California Uniform Commercial Code, counsel for plaintiff undertook to disclaim the meaning and effect of the stipulation and pretrial conference order urged by defendant, i.e., if the one-year limitation of action and limitation of claim period provision contained in defendant's sales documents were determined to be binding on the parties, the defendant would be entitled to judgment and that there would be no need for further trial.

We have had some difficulty in understanding the thrust of plaintiff's argument, and so quote it for whatever such recitation might add to divining its meaning.

Counsel argued, "And the defendant relies on the pretrial conference order recently signed, let me just say that the pretrial conference order, your Honor, refers to the Statute of Limitations binding the parties.

"Now, as I read that provision, when the order was put together, I felt that what we were agreeing to was that if U.C.C. Section 2207 and the law there meant everything that the defendants say it means, meaning that it bars all actions whatsoever by plaintiff against defendant, then they are entitled to judgment.

"That's not really a problem and that's pretty clear. If all actions are barred, all actions are barred. That's—that was my understanding, frankly, your Honor, of the term 'binding.'

"Now, the points raised by the defendants, well, that's not what binding meant. Binding meant binding with respect to the warranty causes of action and not necessarily with respect to the other causes of action.

"Your Honor, I don't think that was what was intended, speaking as one party to the stipulation.

"Furthermore, if the Court reads that language in the pretrial conference order to mean what it's now claimed it means, then I certainly would ask leave of the Court for relief from such—that provision under Code of Civil Procedure Section 473 on the grounds of mistake, because it certainly was not intended by myself a week before trial to waive an important legal argument or my right to make and—or legal argument on behalf of my clients. And I don't think that was the essential purpose of the pretrial conference order.

"I think the essential purpose was to get some of the stipulated facts and matters out of the way and outline where the disputes were.

"And it's been well known by the defendants for quite some time that we have had these causes of action in there and they certainly know that the causes of action involving misrepresentation applies from the court doctrines. And I just don't think that this provision in the pretrial conference order means what it is alleged to mean now. If it does, I certainly will ask the Court for relief."

After the foregoing argument, counsel for plaintiff moved on to the substantive phases of his argument namely whether the one-year limitation provision was a material alteration of the offer to purchase, and whether such provision amounted to a contract of adhesion.

Counsel for defendant then proceeded to close, covering three points: (1) plaintiff was "a merchant" under the California Uniform Commercial Code; (2) the one-year limitation period did not amount to an unreasonable material alteration; (3) the limitation provision was not a contract of adhesion.

The court next proceeded to announce its ruling. To leave no doubt in the reader's mind as to what the court thought it was deciding, the record reads:

"THE COURT: All right. Thank you.

"The two basic issues argued before me now are whether or not 2207 applies in that, and that brings up the subquestions of whether or not both

parties are merchants as defined in the [California] Uniform Commercial Code in 2104.

"Everybody agrees that the defendant is a merchant. The plaintiff vehemently claims he's not a merchant.

"The next main issue is whether or not the one-year Statute of Limitations added by the seller constitutes an unreasonable material alteration of the contract between the parties.

"The adhesion point raised by the plaintiff relates to the method of interpreting the contracts in order to try to determine whether or not this is a material alteration, unreasonable alteration."

The court then went on to note that both parties (including plaintiff) were merchants. It then ruled that the one-year limitation period recited in the sales document was not a material alteration and not unreasonable. It finally ruled that no contract of adhesion was involved (just one involving adhesives).

The record then reflects the following comments by the court:

"Now, this brings me to the $64 question of whether or not this eliminates only the causes of action for breach of contract, breach of warranty; or whether it also eliminates the fraud and other tortious causes of action.

"Plaintiff claims that the limitation applied only to actions brought for breach of contract or warranty. The defendant claims that the language is much broader than that, that it is intended to limit any action arising out of this deal, this purchase of adhesives.

"I think logic forces me to the conclusion that it was the logical intent of the seller and it is the logical interpretation of the language that the claim period was intended to limit any and all lawsuits arising out of the purchase and use of the materials furnished by [defendant] and I think a fair reading of the provision of the document indicates that. It is any action under this contract.

"It doesn't say any action for breach of contract or for warranty or for anything of that sort. It says any action under this contract, and it would be unreasonable to assume that they would want to limit actions at law for breach of contract and not limit actions in equity or actions for tort.

"And I see nothing contrary to public policy or unfair about limiting all actions.

"It provided that within one year after being aware there was a problem, that lawsuit must be brought.

"Lawsuit wasn't for almost two years afterwards. So, therefore, I find that the entire action is barred by the one-year Statute of Limitations.

"Is there anything else that we need to decide at this point?"

Counsel for defendant passed on the question, but counsel for plaintiff asked to be heard. The record then reflects the following:

"MR. SMITH: I'm not going to belabor the point. I know the Court's carefully considered it, but on one point that the Court brought up, and that is the continuing to purchase the adhesive, with respect to these invoices and the idea that the plaintiff had knowledge of the invoices.

"The evidence would be, your Honor, that the defendant [*sic*] did not have knowledge of a limitation of actions. Because the plaintiff did not read that fine print and wasn't aware of it.

"It—it remained essentially a secret as far as plaintiff was concerned for a period of years. And even now, though their—the relations between these parties dated back to early 1970's, it still remained a secret as far as this plaintiff was concerned until after the litigation commenced.

"I think with that in mind, I think we have a situation as far as interpreting this document and the issue on whether it is a contract of adhesion that does bring it within that category and I would direct the Court to the idea that a purchaser of a contract of insurance may be with a particular company that uses the same language in it—in its insurance policy for 20 years. And it's not—and this particular policy of insurance has a particular provision in there that's been in there for 20 years.

"THE COURT: I don't think that's a good comparison because when an individual goes out and buys some insurance from an insurance company, that's quite different from two merchants under the Uniform Commercial Code dealing with each other.

"MR. SMITH: I think that the Court is right in many respects. In that regard, however, the evidence would show in this particular case, your

Honor, that there was quite a bit of trust reposed by the plaintiffs in the defendants and in their technical advice, in their sales representatives. And along with the idea that these people will sell to us something that will work well for our particular application. And with that situation and with it—the trust imposed—reposed, rather, the defendants and their representatives then—I think that brings us much closer to a situation where—like the contract of insurance where the buyer is trusting the agent to handle his matters competently. And I think we have a situation where we are remarkably similar here. And I think this also has some bearing on the issue of materiality here, because the materiality of the reduction of the one year—or to a one-year limitation is significant in the context of this trust being reposed in these defendants and in these defendants having essentially stated repeatedly to plaintiff, 'Our glue cannot be causing this problem. Our adhesive cannot be causing your delaminations. It must be something else. It must be applicator error. It must be something other than our problem.' That coming in the context of the long trusting relationship.

"And with that, I think it becomes material with respect to this particular contract, and I think that is the test.

"I will submit it on that basis.

"THE COURT: Well, the long trust came to an end in July of '77 when you ceased doing business with them because their product wasn't working and that's when the Statute of Limitations began to run.

"I do feel that when two commercial enterprises send invoices to each other with terms written thereon, that the recipient's dutybound to read them. If he doesn't, why, that's at his own peril."

As a consequence of the proceedings recounted, the court made its order granting the "Motion in Limine for Judgment and to Compel Offer of Proof." A written judgment of dismissal was entered in due course, and this appeal followed.

## DISCUSSION

We have deemed it necessary to quote at length, admittedly a tedious circumstance for the reader, the precise facts agreed to as reflected by the pretrial conference order, together with the oral proceedings had with reference to the motion *in limine*. Such necessity arises from plaintiff's first contention on appeal. Plaintiff contends that what actually occurred at the time the motion *in limine* was presented was a motion for a nonsuit, with

the result that defendant's burden on appeal is to demonstrate, viewing most favorably to plaintiff all the evidence before the court, or offered to be proved, that there is no legal basis on which plaintiff can prevail. In other words, plaintiff contends that defendant must demonstrate on appeal that there were no disputed issues of fact remaining to be tried such as were essential to the legal determination made by the trial court.

While plaintiff's contention, falling generally under the heading of "scope of review" is theoretically understandable, it finds absolutely no support in the record. The decisional task with reference to such contention is extremely difficult. We are faced with having to demonstrate a negative. More particularly, plaintiff, to our utter bafflement, argues in its brief that it "was prevented from introducing evidence at trial. . . ." Plaintiff in its brief further argues, again with no support in the record whatsoever, that it "appeals from what was essentially the equivalent of an adverse ruling on a motion for summary judgment." Plaintiff argues further "that the ruling of [the court] for defendants as a matter of law on the disputed issues . . . was erroneous and must be reversed."

Thus, the negative we are faced with demonstrating is that the reported proceeding was none of the things by which plaintiff has attempted to characterize it. Finally, we concluded that the only way to accomplish such demonstration was to set forth the issues found by the pretrial conference order, the facts agreed to, and the proceedings had at the time the motion *in limine* was heard and argued. These were the things and the only things before the trial court, and that, no more no less, is what we are called upon to review.

For a recitation of the appropriate scope of appellate review here called for, we refer plaintiff to *Estate of Dodge* (1971) 6 Cal.3d 311 [98 Cal.Rptr. 801, 491 P.2d 385]. There the court said "We begin our discussion with a statement of the applicable principles of appellate review. ■ As set forth in *Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839], it is 'a judicial function to interpret a written instrument unless the interpretation turns upon the credibility of extrinsic evidence.' The possibility that conflicting inferences can be drawn from uncontroverted evidence does not relieve the appellate court of its duty independently to interpret the instrument; it is only when the issue turns upon the credibility of extrinsic evidence, or requires resolution of a conflict in that evidence, that the trial court determination is binding. (*Parsons* v. *Bristol Development Co.*, 62 Cal.2d at p. 866, fn. 2.)" (*Id.*, at p. 318.) Here, as we have been at pains to point out, despite plaintiff's representations of the record to the contrary, there was no conflict in the extrinsic

evidence; there were no issues of credibility, and so it is our task to arrive at an independent interpretation of the sales documents in light of section 2207 of the Commercial Code.

I

MATERIAL ALTERATION

Defendant's motion *in limine* was brought and granted on the grounds that the one-year limitation periods in the sales documents were additional terms which became part of the contracts, pursuant to California Uniform Commercial Code section 2207. Section 2207 provides in relevant part: "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms. [¶] (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless: (a) The offer expressly limits acceptance to the terms of the offer; (b) They *materially alter* it; or (c) Notification of objection to them has already been given or is given within a reasonable time after notice of them is received." (Italics added.)

The trial court ruled that limiting the period contained in the sales documents was not a material alteration, and further that the one-year period of such limitation was not unreasonable.

Plaintiff does not dispute the applicability of section 2207, and concedes, as to subdivision (2) thereof, that its own offers to purchase did not materially limit acceptance to the terms of the offers, and that it did not object to the one-year limitation provisions. Plaintiff argues, however, that those provisions materially altered the contracts, and therefore did not become part of the contracts. In the trial court, plaintiff also argued that it was not a "merchant" under applicable provisions of the California Uniform Commercial Code. The trial court ruled that plaintiff was a merchant, and, on appeal, plaintiff does not contest that ruling.

On the material alteration issue, section 2207 contains the text of section 2-207 of the Uniform Commercial Code without change. Comment 4 to section 2-207 provides in pertinent part: "Examples of typical clauses which would normally 'materially alter' the contract and so result in surprise or hardship if incorporated without express awareness by the other party are: a clause negating such standard warranties as that of merchantability or

fitness for a particular purpose in circumstances in which either warranty *normally* attaches . . . [or] a clause requiring that complaints be made in a time materially *shorter* than *customary* or *reasonable.*" (Italics added.) However, Comment 5 to section 2-207 provides in pertinent part: "Examples of clauses which involve no element of *unreasonable* surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are: . . . a clause fixing a *reasonable* time for complaints within *customary* limits." (Italics added.)

On the issue of whether, between merchants, a one-year limitation period is normal, customary, or reasonable, there seem to be no California cases directly on point. However, California Uniform Commercial Code section 2725, subdivision (1) provides that the parties to a sales contract may reduce the statutory four-year period of limitations to one year. Moreover, California courts have held that *insurance* contracts (where, presumably, the subscribing party is economically weaker and less sophisticated than the merchant plaintiff here) which shorten the period of limitations to one year are not unfair (*Fageol T. & C. Co.* v. *Pacific Indemnity Co.* (1941) 18 Cal.2d 748, 753 [117 P.2d 669]; *Olds* v. *General Acc. Fire etc. Corp.* (1945) 67 Cal.App.2d 812, 817 [155 P.2d 676]). Otherwise, a district court in New York has recently found that a one-year limitation provision is not an unreasonable or material alteration of a contract pursuant to Uniform Commercial Code section 2-207. (*Aceros Industriales, S.A. de C.V.* v. *Florida Steel, supra,* 528 F.Supp. 1156, 1158.)

In view of all the above, particularly comment 5 under the corresponding section of the Uniform Commercial Code, we hold that the trial court correctly determined that the limitation periods here in question were not material alterations of the contracts, and further in view of section 2725, subdivision (1) of the California Uniform Commercial Code, that the one-year period was not unreasonable. As a consequence, the provisions are legally enforceable.

Plaintiff's attempts to distinguish *Aceros,* and to analogize defendant's one-year limitation provisions to provisions which require arbitration, disclaim warranties, or otherwise contain terms "limiting remedies" (*Album Graphics, Inc.* v. *Beatrice Foods Co.* (1980) 87 Ill.App.3d 338 [408 N.E.2d 1041, 1048]) are without merit. The one-year limitation provisions here do not limit plaintiff's *remedy,* but limit the time within which it may pursue that remedy, and, moreover, do so in a way which is statutorily and judicially acceptable.

## II

### ADHESION

The trial court ruled, although defendant undoubtedly would not have changed the one-year limitation periods if requested, that the contracts were not ones of adhesion because plaintiff did not have to buy from defendant, and had been buying from other suppliers before and after its problems with defendant. Plaintiff contends that the court's decision was incorrect, because the test of an adhesion contract is not whether the subscribing party has other options, but whether the disputed contract provision is inflexible. Not so. As the court correctly noted, both the provisions of the contract *and* the situation of the subscribing party are relevant to a determination of adhesion.

■ " 'The term [contract of adhesion] signifies a *standardized* contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party *only* the opportunity to adhere to the contract or reject it.' " (*Graham* v. *Scissor-Tail, Inc.* (1981) 28 Cal.3d 807, 817 [171 Cal.Rptr. 604, 623 P.2d 165], italics added.) In other words, a contract is adhesive if (1) its terms are inflexible ("standardized"), *and* (2) the subscribing party's "only" options are to take the contract as is or to be without recourse, because it has nowhere else to turn.

In *Scissor-Tail,* the court determined that a performing group's union contract with its promoter was adhesive, because the contract was a standard American Federation of Musicians' contract, *and* the promoter "was required by the realities of his business as a concert promoter to sign A.F. of M. form contracts with *any* concert artist with whom he wished to do business." (*Graham* v. *Scissor-Tail, Inc., supra,* 28 Cal.3d at pp. 818-819, original italics.)

Similarly, the court in *Neal* v. *State Farm Ins. Cos.* (1961) 188 Cal.App.2d 690 [10 Cal.Rptr. 781], relied on by plaintiff, held that an employment contract between an insurance company and its employees was adhesive, because the company "not only prescribe[d] the words of the instrument," but the employees "lack[ed] the economic strength to change such language." (*Id.,* at p. 695.) Plaintiff's argument that the plaintiffs in *Neal* were not without recourse because they could have *purchased policies* from "dozens" of other insurance companies, is based on a misreading of the applicable facts.

## III

### Scope of One-year Limitation

██ Even assuming that the one-year limitation in the sales document was not a material alteration and not unreasonable so as not to prevent its being a bar to the counts for breach of warranty, plaintiff's next contention is that the one-year limitation cannot be relied upon by defendant as a bar to the counts for fraud and negligent misrepresentation.

A fair reading of the stipulation and the pretrial conference order would appear to leave little doubt that the parties, through counsel, agreed that the one-year limitation, if upheld by the court, would extend to all counts. The pertinent portion of the pretrial conference order reads, "The parties have agreed, and it is so ordered, that a determination of any one of the issues numbered ["whether the one year limitation of action [provision] . . . contained in [defendant's] sales documents [is] binding on the parties"] . . . above in favor of [defendant] shall entitle [defendant] to judgment and will avoid the need for a further trial on the merits of plaintiff's underlying claim."

At the argument of the motion *in limine,* counsel for defendant protested vigorously that he had never agreed to anything so sweeping, and asked for an opportunity under section 473 of the Code of Civil Procedure to be relieved of any such effect of the stipulation. However, the trial court, as appears from what has been quoted above, proceeded to a decision on the issue without regard to the stipulation. This part of the ruling is that which the court characterized as the "$64 question."

After noting the differing interpretation placed on the stipulation and order, the court moved on to resolve the issue on its merits. The court's decisional process consisted of first looking to the intent of the defendant-offeree-seller. The language is worth quoting again, ". . . it was the logical intent of the seller and it is the logical interpretation of the language that the claim period was intended to limit any and all lawsuits arising out of the purchase and use of the materials furnished by Borden's, and I think a fair reading of the provision of the document indicates that. It is any action under this contract. [¶] It doesn't say any action for breach of contract or for warranty or for anything of that sort. It says any action under this contract, and it would be unreasonable to assume that they would want to limit actions at law for breach of contract and not limit actions in equity or actions for tort."

We agree that it would be highly unlikely for a seller who had undertaken to introduce a limitation period into the contract with reference to actions brought by the buyer arising "under this contract" to be thinking in differential terms as to which causes of action would be barred and which would not. Thus, there is no doubt but what the defendant's intent was to limit to one year all actions which the buyer might bring, arising "under this contract," i.e., arising from any dispute which evolved as a result of the buyer and seller relationship.

Plaintiff's argument on this point seems to be that merchants may not agree, in the manner contemplated by section 2207 of the California Uniform Commercial Code, to limit what plaintiff characterizes as noncontract causes of action. Conceding a more pertinent focus, such argument is that this broader limitation is unenforceable because it represents a material alteration which by its terms involves an unreasonable surprise and a more strict than customary limitation.

If this is the proper focus of the analysis, plaintiff does not pursue it persuasively. Plaintiff points to California Uniform Commercial Code section 1103, which provides: "Unless displaced by the particular provisions of this code, the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions." While section 1103 may preserve the statute period of limitation as to tort claims *in the absence of a contractual provision to the contrary,* we find nothing in the language of section 1103 which would prevent merchants from expressly agreeing to reduce the period of limitation for tort as well as contract actions, or which would prevent any such provisions from becoming part of the contracts pursuant to section 2207.

Otherwise, plaintiff relies on holdings that an action for rescission of a contract does not bar a damage claim on the basis of fraud or misrepresentation (*Arbuckle Broadcasters* v. *Systems Marketing* (10th Cir. 1981) 642 F.2d 402), and that a contractual covenant of immunity will not bar a cause of action for fraud or negligent misrepresentation (*Clements Auto Company* v. *Service Bureau Corporation* (8th Cir. 1971) 444 F.2d 169; *City Dodge, Inc.* v. *Gardner* (1974) 232 Ga. 766 [208 S.E.2d 794, 71 A.L.R.3d 1054]). These cases, however, concern illegitimate attempts to limit substantive remedies, and not, as here, a recognized procedure for regulating the means to obtain those remedies.

Having given plaintiff's arguments a fair hearing, it is our view that no good purpose is to be served by engaging in a scholastic exercise in which

we wrestle with whether any "tort" cause of action should be barred by the limitation which we have held as a matter of interpretation the defendant-offeree-seller intended. Our task is to decide *this* case, and to do so without regard to labels. Whatever labels plaintiff may have chosen to place on counts 4 and 5, the facts alleged as to 19 paragraphs of each of those counts were incorporated by reference from the first breach of warranty count. In terms of substance, it is meaningless to argue, even though it may not be an unreasonable surprise to limit to one year the filing of a cause of action for breach of warranty, that somehow it *is* an unreasonable surprise to limit a cause of action for "fraud" based on precisely the same facts with the addition of the adjective "fraudulent" as to the representations which otherwise had been characterized as warranties.

Thus, while some case may well arise in which the buyer will try to plead a cause of action in tort where it *would* be a material alteration of the contract to limit the enforceability of this fictional cause of action, because of the unreasonable surprise involved, there is no such cause pleaded here. As a consequence, all the reasoning applicable in holding that the one-year limitation is enforceable as to the three warranty counts, is equally applicable to their counterparts which plaintiff has labeled fraud and negligent misrepresentation.

DISPOSITION

The judgment is affirmed.

Kaufman, Acting P. J., and Rickles, J., concurred.