**WILSON FERTILIZER & GRAIN, INC., Appellant–Plaintiff,**

v.

**ADM MILLING COMPANY, Appellee–Defendant.**

**No. 49A05–9411–CV–462.**

Court of Appeals of Indiana.

Aug. 17, 1995.

Transfer Denied Jan. 11, 1996.

A. Christopher Lee, Rochester, Charles R. Grahn, Indianapolis, for appellant.

Jere L. Humphrey, Kizer & Neu, Plymouth, for appellee.

## OPINION

BARTEAU, Judge.

Wilson Fertilizer & Grain, Inc. (Wilson) appeals the trial court's order dismissing its action against ADM Milling Company (ADM) and ordering the parties to arbitration.

### FACTS

Wilson and ADM entered into a contract under which Wilson shipped grain to ADM. A broker facilitated the deal between Wilson and ADM, and sent each party a confirmation of trade. The confirmation of trade did not contain an arbitration provision. ADM sent a purchase confirmation to Wilson that contained boiler plate language which states:

"This contract is also subject to the Trade Rules of the National Grain and Feed Association currently in effect." Wilson did not object to this language and did not respond to ADM's purchase confirmation.

A dispute arose under the contract and Wilson filed suit against ADM in the Fulton Circuit Court.[1] ADM moved to dismiss the action, claiming that the Trade Rules of the National Grain and Feed Association require the parties to arbitrate the dispute. Wilson argued that the arbitration provisions were not included within the terms of its agreement with ADM. The trial court granted ADM's motion and ordered the parties to arbitration.

### DISCUSSION

A party seeking to compel arbitration must satisfy a two-prong burden of proof. First, the party must demonstrate an enforceable agreement to arbitrate the dispute. Second, the party must prove that the disputed matter is the type of claim that the parties agreed to arbitrate. *See St. John Sanitary Dist. v. Town of Schererville* (1993), Ind.App., 621 N.E.2d 1160, 1162. In this case, the second prong of our analysis is not in dispute, since neither party contends that the arbitration provisions do not encompass Wilson's claim. The only question presented herein is under the first prong: whether the additional terms are included in the contract between Wilson and ADM.

Whether the additional provisions are part of the contract is controlled by Ind.Code 26-1-2-207, which provides in part:

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the

---

1. Venue of this matter was transferred to the Marion Circuit Court pursuant to Ind.Trial Rule 75(B).

contract. Between merchants such terms become part of the contract unless:

(a) the offer expressly limits acceptance to the terms of the offer;

(b) they materially alter it; or

(c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

The parties agree that a contract has been formed and that the disputed provisions in ADM's confirmation form are additional terms. The parties further agree that they are merchants, and that the only challenge in this appeal rises under I.C. 26–1–2–207(2)(b), whether the additional terms materially alter the agreement.[2]

▉ Indiana Code 26–1–2–207(2) presumes that additional terms become part of a contract between merchants in the absence of one of the exceptions listed in that statute. "Between merchants such terms become part of the contract *unless:* . . . (b) they materially alter it." I.C. 26–1–2–207(2)(b) (emphasis added). "As between merchants, paragraph 2–207(2)(b) presumes the inclusion of the additional clause unless one of the three exceptions is met. Therefore, . . . the party opposing such inclusion . . . [bears] the burden of proving the exception." *Comark Merchandising, Inc. v. Highland Group, Inc.* (7th Cir.1991), 932 F.2d 1196, 1201 (citing *Dale R. Horning Co. v. Falconer Glass Indus., Inc.* (S.D.Ind.1990), 730 F.Supp. 962, 966 n. 2). ADM's burden of proving the existence of an agreement to arbitrate is satisfied by our presumption under § 2–207(2) that the additional provisions in its confirmation form are included in its agreement with Wilson. Under § 2–207(2) the burden is on Wilson to prove that the additional arbitration provisions are not part of the contract—i.e. that inclusion of the arbitration provisions would materially alter the agreement. I.C. 26–1–2–207(2)(b).

The test for whether additional terms materially alter an agreement is whether their "incorporation into the contract without express awareness by the other party would result in surprise or hardship." *Maxon Corp. v. Tyler Pipe Indus., Inc.* (1986), Ind. App., 497 N.E.2d 570, 576, *reh'g denied, trans. denied.* The Uniform Commercial Code Comments to § 2–207 provide examples of terms that do and do not materially alter agreements.

4. Examples of typical clauses which would normally "materially alter" the contract and so result in surprise or hardship if incorporated without express awareness by the other party are: a clause negating such standard warranties as that of merchantibility or fitness for a particular purpose in circumstances in which either warranty normally attaches; a clause requiring a guaranty of 90% or 100% deliveries in a case such as a contract by cannery, where the usage of the trade allows greater quantity leeways; a clause reserving to the seller the power to cancel upon the buyer's failure to meet any invoice when due; a clause requiring that complaints be made in a time materially shorter than customary or reasonable.

5. Examples of clauses which involve no element of unreasonable surprise and which therefore are to be incorporated in the contract unless notice of objection is seasonably given are: a clause setting forth and perhaps enlarging slightly upon the seller's exemption due to supervening causes beyond his control, similar to those covered by the provision of this Article on merchant's excuse by failure of presupposed conditions or a clause fixing in advance any reasonable formula of proration under such circumstances; a clause fixing a reasonable time for complaints within customary limits, or in the case of a purchase for sub-sale, providing for inspection by the sub-purchaser; a clause providing for interest on overdue invoices or fixing the seller's standard credit terms where they are within the range of trade practice and do not limit any credit bargained for; a clause limiting the right of rejection for defects which fall within the customary trade tolerances for acceptance "with adjustment" or otherwise limiting a remedy in a reasonable manner.

---

**2.** The confirmation of trade did not limit acceptance to its terms under § 2–207(2)(a), and Wilson did not object to ADM's additional terms under § 2–207(2)(c).

I.C. 26–1–2–207, *Uniform Commercial Code Comment 4, 5.* Neither of these Comments specifically mention arbitration provisions.

Some jurisdictions that have considered this issue have adopted the "New York rule" holding that additional arbitration provisions create a material alteration per se. *See, e.g., Marlene Indus. Corp. v. Carnac Textiles, Inc.* (1978), 45 N.Y.2d 327, 408 N.Y.S.2d 410, 380 N.E.2d 239; *John Thallon & Co. v. M & N Meat Co.* (E.D.N.Y.1975), 396 F.Supp. 1239; *Frances Hosiery Mills, Inc. v. Burlington Indus., Inc.* (1974), 285 N.C. 344, 204 S.E.2d 834. This rule is based on New York's well-established law that parties will not be compelled to arbitrate "in the absence of an express, unequivocal agreement to that effect; absent such an explicit commitment neither party may be compelled to arbitrate." *Marlene,* 380 N.E.2d at 242. The *Marlene* court reasoned:

> [B]y agreeing to arbitrate a party waives in large part many of his normal rights under the procedural and substantive law of the state, and it would be unfair to infer a significant waiver on the basis of anything less than a clear indication of intent.

*Id.* The *Marlene* court concluded that, as a matter of law, additional arbitration provisions impose a hardship on a merchant and, therefore, materially alter agreements under § 2–207(2).

This approach is not without precedent in Indiana. We held in *Maxon Corp.* that, as a matter of law, the inclusion of an additional indemnity clause resulted in hardship and therefore materially altered an agreement.

> There can be no doubt that Maxon's indemnity clause would impose serious hardship if incorporated without Tyler's express awareness. By its very nature, a clause which shifts liability from a negligent party to an innocent party imposes hardship. Accordingly, we hold that Maxon's indemnity clause constitutes a material alteration as a matter of law.

*Maxon Corp.,* 497 N.E.2d at 576. Wilson argues that we should follow the New York rule and find that, like the indemnity clause in *Maxon Corp.,* ADM's additional arbitration provisions materially alter the agreement as a matter of law.

Before addressing the merits of Wilson's argument, we turn to ADM's parallel but opposite assertion that, as a matter of law, additional arbitration provisions do not materially alter an agreement. In support of this, ADM points to the case of *Continental Grain Co. v. Followell* (1985), Ind.App., 475 N.E.2d 318, *reh'g denied, trans. denied,* and the following excerpt:

> The phrase after the comma in 2–207(1) "unless acceptance is expressly made conditional on assent to the additional or different terms" must be construed as imposing a limitation upon how much an acceptance can differ and still be considered an acceptance at all. White & Summers state:
>
> > "We think that in the usual purchase order-acknowledgement context the forms do not approach this limit at least if the forms do not diverge as to price, quality, quantity, or delivery terms, but only as to the usual unbargained terms on the reversed side concerning remedies, arbitration and the like."

475 N.E.2d at 322 (citing White & Summers, *Uniform Commercial Code,* Chap. 1 (2d ed. 1980)) (court's emphasis omitted). ADM contends that our reference to arbitration provisions in that passage conclusively determines that its additional arbitration provisions do not materially alter the agreement. However, ADM's argument takes *Continental Grain* out of context.

*Continental Grain* defines the "limitation upon how much an acceptance can differ and still be considered an acceptance at all." 475 N.E.2d at 322. The question we faced in *Continental Grain,* and the "limit" to which White and Summers referred, is the degree to which the terms of a confirmation form may differ from an offer and still operate as a valid acceptance. That is significantly different from the question presented in this case—whether specific additional terms materially alter an agreement and therefore are not part of the contract. Here, the parties agree that ADM's confirmation form operated as a valid acceptance and that a contract has been formed, but dispute whether the arbitration provisions are included within the

terms of the agreement. We reject ADM's argument that the inclusion of additional arbitration provisions does not materially alter an agreement as a matter of law.[3]

Likewise, we reject Wilson's argument that additional arbitration provisions do materially alter an agreement as a matter of law, and decline to adopt the New York rule. Instead, whether included arbitration provisions result in hardship or surprise depends upon the facts and circumstances of each case. This approach is in accord with the analysis suggested in the Uniform Commercial Code Comments.

> [The Uniform Commercial Code Comments give] as examples of nonmaterial alterations "a clause fixing a reasonable time for complaints *within customary limits,*" "a clause providing for interest … *within the range of trade practice,*" "a clause limiting the right of rejection for defects which fall *within the customary trade tolerances*…." Examples of material alterations are "a clause negating such *standard* warranties …," "a clause requiring a guaranty or 90% of 100% deliveries … where the *usage of trade* allows greater quantity leeways," "a clause requiring that complaints be made in a time materially shorter than *customary* or reasonable."

*Schulze & Burch Biscuit Co. v. Tree Top, Inc.* (7th Cir.1987), 831 F.2d 709, 714 (emphasis by 7th Circuit). The Comments suggest that hardship or surprise may be created by terms that deviate from customary trade standards and practices, but may not be created by terms that operate within the accepted norms of the parties's particular trade.

Unlike the indemnity clause in *Maxon Corp.,* requiring a party to arbitrate a dispute does not *necessarily* place a hardship on the party. To the contrary, arbitration may work to the party's benefit by facilitating an efficient and potentially favorable resolution to a dispute. Many trades employ arbitration as a usual and customary dispute resolution mechanism. In light of this, even New York courts have deviated from their per se rule and have held that an additional arbitration clause is not a material alteration if the party had reason to know that such a clause was customarily used in the trade. *See Schubtex, Inc. v. Allen Snyder, Inc.* (1979), 49 N.Y.2d 1, 424 N.Y.S.2d 133, 399 N.E.2d 1154, *reh'g denied; In re C.M.I. Clothesmakers, Inc.* (N.Y.Sup.Ct.1975), 85 Misc.2d 462, 380 N.Y.S.2d 447.

Whether an additional arbitration clause creates hardship or surprise, and therefore materially alters an agreement under § 2–207(2)(b), depends upon the circumstances of each case. *See N & D Fashions, Inc. v. DHJ Indus., Inc.* (8th Cir.1976), 548 F.2d 722; *Dorton v. Collins & Aikman Corp.* (6th Cir.1972), 453 F.2d 1161; *Bergquist Co. v. Sunroc Corp.* (E.D.Penn.1991), 777 F.Supp. 1236; *Dale R. Horning Co.* (1990), 730 F.Supp. 962. Determining this requires the trial court to make a factual evaluation of the parties's positions in each case. *Luedtke Engineering Co. v. Indiana Limestone Co.* (7th Cir.1984), 740 F.2d 598, 600 (applying Indiana law). "Whether a term is a material alteration under Ind.Code § 26–1–2–207 is a question of fact to be resolved by the trial court, and thus we will overturn the court's conclusion only if clearly erroneous." *Id.*

Turning to the facts presented, Wilson argues that the trial court erroneously determined that the additional provisions did not materially alter its agreement with ADM because the evidence conclusively shows that inclusion of the provisions imposes hardship on Wilson. Specifically, Wilson argues that the National Grain and Feed Association Rules of Arbitration significantly reduce the time period during which it may file its complaint against ADM from Indiana's six-year statute of limitation to one year. Wilson argues that this results in hardship because, now that its claim has been dismissed from the Marion Circuit Court, time has run for Wilson to file its

---

**3.** The *Continental Grain* case did not involve an arbitration provision. The decision only refer- ences an arbitration agreement in dicta, as the

claim under the arbitration rules.[4] We disagree for two reasons.

First of all, contractually reducing the time period during which parties may bring complaints is permitted under the Uniform Commercial Code. Comment 4 to I.C. 26–1–2–207 provides as an example of an additional term that does not result in hardship or surprise "a clause fixing a reasonable time for complaints within customary limits...." And further, I.C. 26–1–2–725(1) states:

> An action for breach of any contract for sale must be commenced within four (4) years after the cause of action has accrued. By the original agreement the parties may reduce the period of limitation to not less than one (1) year, but may not extend it.

Thus, Indiana law specifically permits parties to a contract for sale to reduce the time for filing claims to one year, and Wilson has not shown that the one-year limitation is not within the customary limits of the trade.[5]

Second, and even more significantly, we are persuaded by Wilson's apparent ability to have submitted its claim for arbitration within the one-year limit. The contract between Wilson and ADM was formed on October 20, 1992. There is nothing in the record indicating when Wilson delivered its grain to ADM, or when ADM's alleged breach occurred. However, Wilson filed its complaint for damages in the Fulton Circuit Court on September 24, 1993, within one year after the contract was formed. Thus, Wilson filed its complaint within one year after the cause of action accrued because, as a matter of logic, an action for breach of contract can only accrue after the contract was formed. If Wilson was able to file its complaint in court within one year after the cause of action accrued, we fail to see how a contract provision requiring Wilson to submit its claim for arbitration in the same time period imposes a hardship.

This is in accord with other jurisdictions that have considered reduced time periods for bringing actions included in contracts under § 2–207. *See, e.g., Therma–Coustics Mfg., Inc. v. Borden Inc.* (1985), 167 Cal. App.3d 282, 213 Cal.Rptr. 611, 619; *Aceros Industriales, S.A. de C.V. v. Florida Steel* (S.D.N.Y.1982), 528 F.Supp. 1156, 1158. The contractual one-year limitation period is expressly permitted under Indiana law, and the evidence supports the conclusion that the one-year limitation on filing claims did not result in hardship.

Wilson's argument that it is now time-barred from arbitrating its claim against ADM, and that it will suffer a hardship under the additional provisions, considers the additional terms in the light of 20/20 retrospect, rather than focusing on the parties's agreement and expectations at the time the contract was formed. Only now, upon finding that the additional provisions do not work in its favor, does Wilson raise an objection to the inclusion of the terms in the contract. Our Uniform Commercial Code requires Wilson to have raised such an objection within a reasonable time after receiving ADM's purchase confirmation. I.C. 26–1–2–207(2)(c). Wilson did not do so.

However, Wilson argues that it "was ambushed by the 'arbitration provision,'" because it was not expressly stated on the reverse side of ADM's purchase confirmation. Appellant's Brief at 8. ADM's confirmation form did not specify that the contract was subject to arbitration, but rather incorporated by reference the trade rules, which include arbitration provisions. ADM did not attach the trade rules to its confirmation, and the confirmation form does not specify a

---

reference was included in the citation from White & Summers.

**4.** We do not address the questions of whether the arbitration rules found in the Trade Rules of the National Grain and Feed Association bars Wilson from submitting its claim for arbitration, or whether ADM's Motion to Compel Arbitration estops ADM from seeking a dismissal from arbitration. Once the court determines that a dispute is subject to arbitration, all additional concerns, including issues regarding the merits of the underlying claim or procedural arbitrability, are for the arbitrator. *See St. John Sanitary Dist.*, 621 N.E.2d at 1162; *Elzinga & Volkers, Inc. v. LSSC Corp.* (N.D.Ind.1993), 838 F.Supp. 1306, 1309.

**5.** We also note for the purpose of clarity that, under I.C. 26–1–2–725(1), the limitation period for Wilson's claim is four years and not six as Wilson contends.

resource from which Wilson could obtain a copy of the trade rules.

Wilson complains that it was not a member of the National Grain and Feed Association, was not familiar with its rules, and was unaware that the rules contained arbitration provisions. To the contrary, ADM argues that the fact that Wilson did not know the contents of the trade association's rules was all the more reason for it to have objected to the provisions under § 2–207(2)(c) or at least to have inquired as to the contents of the rules.

Whether incorporating the trade association's rules by reference resulted in surprise is a question of fact left to the trial court. To this end, Wilson argues that "[n]o evidence was presented concerning this contractual relationship that would indicate that Wilson, because of course of business or usage of trade, should have had knowledge of the binding arbitration provisions contained in the National Grain and Feed Association Rules." Appellant's Brief at 8. However, while evidence of usage of trade and course of dealings are not conclusive on the question of surprise, see *Maxon Corp.*, 497 N.E.2d at 576, such proof is significant to the issue. See *Dixie Aluminum Products Co., Inc. v. Mitsubishi International Corp.* (N.D.Ga. 1992), 785 F.Supp. 157.

> In short, a party should not be surprised to find in a confirmation a clause of a type that is customarily used within the trade, whereas the clause is an unreasonable surprise where it represents an unreasonable or harsh deviation from custom.

*Schulze & Burch Biscuit Co.*, 831 F.2d at 714.

While Wilson is correct that ADM did not produce any evidence on usage of trade or course of dealings, we note that Wilson did not produce any evidence of such either, and that the burden of proof was on Wilson to show that including the additional terms would materially alter the agreement. While it is possible to prove surprise under § 2–207 without presenting evidence on usage of

trade and course of dealings, Wilson's argument that ADM did not produce such evidence is to no avail in the absence of evidence presented by Wilson sufficient to carry its burden.

Wilson argued to the trial court that surprise arose from the combination of the arbitration provisions being incorporated by reference into the agreement and the hectic state of Wilson's business at the time the contract was formed. As counsel argued to the trial court: [6]

> [The contract] says that these rules are going to apply therefore in the middle of busy season, this was in October, Wilson Fertilizer & Grains, a decent size local operation, and their hair is on fire in October. I mean, they're making transactions, they're doing things left and right. They're—if the Court determines that this sort of arbitration provision is going to be binding on Wilsons, then ... its putting way to [sic] much burden on small businesses like Wilsons to read not only every single provision but then to go and do extra research to be able to determine exactly what the meaning of this contract is....

As was the trial court, we are unpersuaded by Wilson's argument that it should not be made to bear the burden of objecting to the additional terms in the contract or inquiring as to provisions incorporated by reference. In *Continental Grain*, a Brown County farmer who had never before dealt in grain futures contracted to sell corn and soy beans to a grain elevator. After reaching an oral agreement, the grain elevator company sent the farmer a confirmation form with additional language on its reverse side. Item six on the back of the form stated "Buyer reserves right to change destination of shipments." Upon reading this, the farmer telephoned the elevator company to voice his objection, and was told that the term did not mean anything. Nevertheless, the farmer returned the form to the elevator company

---

6. No citation to the record is provided because the pages in the transcript of the evidence are not numbered in accordance with Ind.Appellate Rule 7.1(A) & 7.2(A)(3)(a). Also, Appellant has not provided margin notations, as required in App.R. 7.2(A)(3)(a). We caution counsel for Appellant to attend to these oversights in future appeals.

with the notation "I do not agree with item 6." 475 N.E.2d at 319–20.

Perhaps the farmer in *Continental Grain* was unaware that he was acting in accordance with I.C. 26–1–2–207(2)(c) in notifying the elevator company of his objection to the additional term within a reasonable time. However, it is clear that the farmer, upon entering the unfamiliar business of grain futures, did so cautiously and, upon reading the form and finding what appeared to be a disagreeable term, sought clarification and acted to protect his interest. We fail to see why Wilson, a "decent size local operation" that makes transactions "left and right" should not be required to act in its own interest in the same manner as the Brown County farmer. Therefore, we reject Wilson's argument that it should not be made to bear the burden of standing vigilant over its own business affairs.

The trial court's finding that the additional term in ADM's purchase confirmation did not materially alter the agreement is supported by the evidence and is not clearly erroneous.

AFFIRMED.

SHARPNACK, C.J., concurs.

KIRSCH, J., concurs and dissents with opinion.

KIRSCH, Judge, concurring and dissenting.

I fully concur with the rule of law set forth in the majority opinion. From its application to the facts of this case, however, I respectfully dissent.

ADM Milling Company purchased 60,000 bushels of wheat from Wilson Fertilizer & Grain, Inc. on October 20, 1992. The order was placed through a broker, Edward E. Smith & Co., Inc. The grain was shipped in two shipments: the first ten car loads were shipped the day of the order (October 20th); the remaining eight car loads were shipped two days later. On the date of the order, the broker sent a confirmation of the order; ADM also sent a confirmation the same day. The ADM confirmation contained the following language: "This Contract is also subject to the Trade Rules of the National Grain and Feed Association currently in effect.... The Trade Rules were not set forth in the contract." Included in these Trade Rules were an arbitration provision and a one year limitation period. When ADM did not pay as agreed, Wilson filed suit to collect the balance due. The response was a motion to dismiss based upon the arbitration provision in the Trade Rules. When the court ultimately granted the motion, ADM informed Wilson that the Trade Rules also provided a one year limitation period which had now expired.

The majority states: "The test for whether additional terms materially alter an agreement is whether their 'incorporation into the contract without express awareness by the other party would result in surprise or hardship.'" *Opinion* at 850. "Whether a term is a material alteration under Ind.Code § 26–1–2–207 is a question of fact to be resolved by the trial court...." *Id.* at 852. "[W]hether included arbitration provisions result in hardship or surprise depends on the circumstances of each case." *Id.* at 852.

The United States Court of Appeals for the Seventh Circuit anticipated this holding in *Luedtke Engineering Co. v. Indiana Limestone Co.* (7th Cir.1984), 740 F.2d 598, where the court stated:

"First, Comment 4 to Section 2–207 defines 'material alteration' as a term that would 'result in surprise or hardship if incorporated without express awareness by the other party.' Determining this requires the trial court to make a factual evaluation of the parties' positions in each case. As one court stated, '[T]he materiality of a change is to be judged in large party (sic) by the expectations of the parties involved in the transaction. That is a determination uniquely within the province of a fact finder....' *Ebasco Services, Inc. v. Pennsylvania Power & Light Co.*, 402 F.Supp. 421, 442–43 (E.D.Pa.1975). Second, other courts interpreting UCC Section 2–207 uniformly have held that the materiality of an alteration is a question of fact.... We hold that whether a term is a material alteration under Ind.Code § 26–

1–2–207 is a question of fact to be resolved by the trial court...."

*Id.* at 600 (citations omitted).

The holding by the majority in this case and by the Seventh Circuit in *Luedtke* are supported by Professor Hawkland in his treatise on the Uniform Commercial Code. He states:

"Comments 4 and 5 [to UCC § 2–207] give examples of terms in the offeree's form which do and do not materially alter the contract created by the exchange of forms, but they are not particularly helpful since they involve the kinds of terms that normally would be included or excluded from most agreements because of trade usage.... There are many additional terms to be found in the offeree's form that neither adopt nor reject trade usage, however, and it is those terms that section 2–207(b) mainly addresses. If they are substantially different from the terms of the contract, silence will not constitute acceptance. If they differ only in minor respects, they can be accepted by silence. *Whether there is substantial or minor difference in this regard is said to be a question of fact and that summary judgment usually is not appropriate where this question is an issue.*"

Hawkland, *Uniform Commercial Code Series* § 2–207:03 (1995) (emphasis added).

Applying the foregoing to the present case, there are two factual issues which should be determined by the trial court: The first issue is whether ADM's confirmation even constituted an acceptance within the meaning of UCC § 2–207. If the confirmation sent by the broker to Wilson was sent prior to ADM's confirmation, it constitutes the acceptance of the offer; the contract was fully formed by that confirmation. The later confirmation sent by ADM would only be a proposal to modify the contract as formed and UCC § 2–207 would not apply. Second, even if ADM's confirmation constitutes the acceptance and § 2–207 does apply, there is an unresolved question of fact as to whether the additional term contained in such confirmation results in hardship or surprise and thus constitutes a material alteration. In either event, these unresolved factual issues make the dismissal of this case inappropriate.

ADM Milling Company played the latest version of "Legal Gotcha." And it won. It has received the grain which it ordered and escaped paying for it.

I would reverse the dismissal and remand to the trial court to conduct an evidentiary hearing.