FAIRFIELD–NOBLE CORPORATION, Plaintiff,

v.

PRESSMAN–GUTMAN CO. and Pressman-Gutman Co., Inc., Defendants.

79 Civ. 1958 (KTD).

United States District Court, S. D. New York.

Aug. 9, 1979.

Blumberg, Singer, Ross, Gottesman, Paradise & Gordon, New York City, for plaintiff.

Anderson, Russell, Kill & Olick, P. C., New York City, for defendant Pressman-Gutman Co., Inc.; Jerold Oshinsky, New York City, of counsel.

## OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge:

This action was originally commenced in New York State Supreme Court, New York County, by the plaintiff, Fairfield-Noble Corporation [hereinafter referred to as "Fairfield"], charging the defendants with breach of contract and warranty in the sale of certain fabrics. Thereafter, the defendants, Pressman-Gutman Co.[1] and Pressman-Gutman Co., Inc. [hereinafter collectively referred to as "Pressman" or "defendant"], removed the action to this Court and have filed the instant petition for an order staying this action and compelling arbitration pursuant to the Federal Arbitration Act, [the "Act"], 9 U.S.C. §§ 1–14. Fairfield is a corporation organized under the law of New York where it has its principal place of business. Pressman is a Pennsylvania cor-

poration with its principal place of business in the state of Pennsylvania. Jurisdiction is based upon diversity of citizenship, 28 U.S.C. § 1332, and § 4 of the Act.

The instant complaint charges that certain fabric ordered from defendant was defective in that it did not possess the proper composition, various dye lots were mismatched and in general did not correspond to the fabric samples upon which the orders were based. As a result, plaintiff seeks 1.1 million dollars in damages including $500,-000 for alleged loss of reputation and good will.

The facts relevant to the determination of the instant petition are as follows:

In January, 1978, the defendant, through its salesmen, displayed samples of its product to the plaintiff. Thereafter, on January 23rd, the defendant shipped 20 yards of brown Orkney fabric to the plaintiff as a sample. (Defendant's Exhibit A). Then, on February 3rd and 15th, an additional 70 yards of Orkney fabric were ordered by plaintiff and shipped by defendant. (Defendant's Exhibits B, C). The conceded purpose of these relatively small purchases was to enable the plaintiff a garment manufacturer, to closely inspect the fabric prior to ordering the large quantity of the fabric necessary to manufacture its garments. The plaintiff also ordered 60 additional yards of the Orkney fabric which were to be shown to plaintiff's customers. (Defendant's Exhibit D). Based upon its customers' reactions to these samples and plaintiff's own inspection thereof, the plaintiff agreed to order a portion of its fabric requirements from the defendant.

The only document to be exchanged concerning this bulk purchase, and indeed a key document herein, was defendant's order form dated February 3, 1978. (Defendant's Exhibit F). The form, called a "blanket order" reserved 15,000 yards of "unassorted" Orkney fabric for the plaintiff and granted plaintiff an option to reserve an additional 15,000 yards of "unassorted" fab-

---

1. It appears from the papers before me that although named as a co-defendant herein, the Pressman-Gutman Co., formally a Pennsylvania company, was dissolved in 1946.

ric, which was to be exercised on or before February 21st. In addition, the order provided that the plaintiff was to specify the quantity and color of a given order drawn against the reserved and optioned yardage four to five weeks prior to taking delivery thereof. Thereafter, the fabric was to be "assorted" and delivered by the defendant to one of plaintiff's many New York plants.

The blanket order also contained the following provisions:

*Contract acknowledgement* : This contract embodying the terms on the face and reverse side hereof confirms the agreement to buy and sell the goods herein described and is hereby acknowledged by the parties to be correct. It shall become binding and enforceable against the Buyer either (a) when signed or accepted in writing by the Buyer or its agent or broker, or (b) when signed and delivered by the Seller to the Buyer unless the Buyer gives the Seller written notice of objection to its contents within ten days after receipt hereof; or (c) when Buyer has paid for or accepted delivery of the whole or any part of the goods herein described.

The terms hereof shall control regardless of whether or when the Buyer has submitted or sent its own manifold or purchase order. No modification of this contract shall become effective unless in writing signed by the parties. Any assortments or shipping instructions, whether oral or written, involving the above described goods, and irrespective of any terms or provisions thereof, shall be deemed subject to all of the terms and provisions of this contract unless otherwise agreed in writing by the parties.

. . . . .

*ARBITRATION.* Any controversy or claim arising out of this contract, any interpretation thereof or breach thereof shall be settled by arbitration in the City of New York before the American Arbitration Association under the Rules of the General Arbitration Council of the Textile Industry then obtaining. The parties consent to the jurisdiction of the Su-

preme Court of the State of New York, or of any other court of proper jurisdiction, for all purposes including enforcement of the .arbitration agreement and proceedings and entry of any judgment on any award and further contend that any process or notice of motion may be served either personally or by mail outside the State of New York, provided a reasonable time for appearance is allowed.

There were six quantity and color assortments drawn against the yardage initially reserved and the additional yardage as to which plaintiff exercised its option. The first assortment occurred on February 17, 1978 and was evidenced by an exchange of order forms. The defendant's order form contained the identical "Contract acknowledgement" and "Arbitration" clauses contained in the blanket order. The plaintiff's, entitled "Fabric Purchase Order," contained the following provisions:

ACCEPTANCE:

This order may be accepted only by timely shipment of the goods herein specified.

CHANGES:

Acceptance of this order must be made on its exact terms. Changes, amendments or variations of this order shall be effective only with Buyer's written consent.

The five color and quantity assortment transactions which followed were virtually identical to this initial transaction. That is to say, with each transaction the parties exchanged the same forms which in turn contained the identical provisions set forth above.

This case involves a classic example of what has come to be known as the "battle of the forms." Neither party disputes the fact that they entered into a contract for the sale of goods. Nor do the parties contest the essential and material terms of that agreement. They do, however, vigorously dispute whether the arbitration provision set forth in the blanket order and in defendant's order form became part of their agreement.

Pressman, in support of the instant petition, argues that the plaintiff agreed to arbitrate disputes such as the one at bar. The defendant reasons that the blanket order, against which all six color and quantity assortments were drawn, embodies the terms of the agreement for the purchase of 30,000 yards of fabric. It concludes that since the blanket order provided that all disputes arising from the agreement be resolved by arbitration, by failing to object to the provision in a timely fashion, the plaintiff implicitly agreed to its inclusion.

The plaintiff, however, argues that the parties never mutually agreed to arbitrate. Insofar as the blanket order is concerned, the plaintiff contends that it did not evidence an agreement at all. Rather, the order was simply a "memorandum of the parties intent [looking] towards the purchase and sale of a specific quantity of fabric . . . in the future." (Plaintiff's Memorandum at 7). In other words, the order was at best an agreement to agree.

Concerning the six assortment transactions, the plaintiff argues that its six purchase orders were simply "offers" to purchase fabric from the defendant. Since acceptance of each offer was expressly limited to the provisions contained on the purchase form, none of which provided for arbitration, arbitration was never mutually agreed upon and in fact was implicitly objected to by the plaintiff.

Section 2–207 of the Uniform Commercial Code [hereinafter referred to as the "Code"] was written to resolve the "battle of the forms." It provides that as between merchants, an "acceptance or a written confirmation . . . operates as an acceptance even though it states terms additional to or different from those offered or agreed upon . . . [and] such terms become part of the contract unless . . . they materially alter [the agreement]."

As judicially construed in New York, the law applicable to the issue at bar,[2] under Section 2–207 of the Code the unilateral insertion of an arbitration clause constitutes a *per se* material alteration of a contract. *Marlene Industries. Corp. v. Carnac Textile, Inc.*, 45 N.Y.2d 327, 408 N.Y. S.2d 410, 380 N.E.2d 239 (1978). *See also Supak & Sons Mfg. Co., Inc. v. Pervel Industries, Inc.*, 593 F.2d 135 (4th Cir. 1979). Indeed, in *Marlene* the Court held that since an arbitration clause as an additional term constitutes a material alteration, it becomes part of the agreement "only if it is expressly assented to by both parties." 45 N.Y.2d at 334, 408 N.Y.S.2d at 414, 380 N.E.2d at 242.

The issue, therefore, is whether the arbitration clause was a term additional to or different from the agreement reached by the parties.

It is evident that defendant's blanket order form was not the sole communication between the parties concerning the reservation of fabric. Likewise, defendant's order form and plaintiff's order form were not the sole communications concerning the six color and quantity assortments. Rather, there were certain oral communications which preceded the transmission of these forms. Nowhere, however, does the defendant assert that the parties discussed the question of arbitration with respect to either the reservation of fabric or the assortment thereof. Nor does the defendant attack the Affidavit of Joseph Berrebi, plaintiff's Vice President in charge of manufacturing, in which the affiant denies ever discussing or agreeing to arbitrate any disputes. I must conclude, therefore, that the

2. There can be no doubt that New York law is applicable to the issue at bar. It is now settled that while federal substantive law governs the "scope" of a valid arbitration clause, it is state law which controls whether a valid arbitration clause exists. *Duplan Corp. v. W. B. Davis Hosiery Mills, Inc.*, 442 F.Supp. 86, 88 (S.D.N.Y.1977). *Accord, Supak & Sons, supra*, 593 F.2d 135. This is precisely the issue at bar.

Moreover, both parties have expressly designated New York law as controlling all issues arising from the contract. (Defendant's Exhibit M, Plaintiff's Exhibit G).

While this choice is not binding upon this Court, I find that since New York law bears a reasonable relation to the transaction in issue, it shall control. See Section 1–105 of the Uniform Commercial Code.

question of arbitration first appeared on defendant's forms. Thus, arbitration was a term "additional to or different from" those agreed upon. As such, the arbitration provision, unilaterally inserted by the defendant, was a material alteration of the contract and accordingly did not become a part thereof.

The parties have expended much energy in attempting to classify the forms in issue as either the embodiment of their agreement, individual offers and acceptances or simply written confirmations of their prior oral agreements. These distinctions, however, are of no moment in the resolution of the issue at bar. Indeed, it is well settled that Section 2–207 of the Code was intended to include all such situations: "one in which the parties have reached a prior oral contract and any writings serve only as a confirmation of that contract; and one in which the prior dealings of the parties did not comprise actual formation of a contract, and the writings themselves serve as offer and/or acceptance. In either case, the writing or writings may contain additional terms, and in either case the effect of such additional terms under the code is the same." *Marlene Industries Corp. v. Carnac Textiles, Inc., supra*, 45 N.Y.2d at 332, 408 N.Y.S.2d at 412, 380 N.E.2d at 241. Thus, whether a contract existed on February 3, 1978 when defendant's blanket order was transmitted, or whether the subsequent exchange of forms were offers and/or acceptances or were mere confirmations of oral agreements, is of no consequence. The result is the same under Section 2–207. *Id.* at 333, 408 N.Y.S.2d 410, 380 N.E.2d 239.

Thus, under the law of New York, the contract between the plaintiff and defendant does not contain an arbitration clause. Hence, the defendant's petition for a stay of this action and an order compelling arbitration is denied.

SO ORDERED.