[Civ. No. 57308. Second Dist., Div. Four. Jan. 6, 1981.]

LOCKHEED ELECTRONICS COMPANY, INC.,
Plaintiff and Respondent, v.
KERONIX, INC., Defendant and Appellant.

306

**COUNSEL**

Henry C. Hopkins and Douglas D. Roccaforte for Defendant and Appellant.

Iverson, Yoakum, Papiano & Hatch and John A. Slezak for Plaintiff and Respondent.

**OPINION**

KINGSLEY, J.—Plaintiff and respondent Lockheed Electronics Company (LEC) sued defendant and appellant Keronix, Inc., for breach of

contract. Lockheed and Keronix were merchants within the meaning of section 2104 of the California version of the Uniform Commercial Code.[1]

On February 15, 1974, Keronix issued to LEC its purchase order No. 04963 for certain computer cores to be delivered at the rate of 5 million cores per week starting at the completion of Keronix's then pending purchase order No. 04298.

The purchase order from Keronix included on its face the following statement: "VENDOR-NOTE Instructions on Face and Reverse side apply to this order."

On the reverse side of the purchase order are preprinted about 20 terms and conditions and the page is titled "Purchase Order-Terms and Conditions." These terms and conditions included a warranty as well as a statement "this order expressly limits acceptance to the terms" of the order.

On February 18 LEC mailed Keronix a "quotation" referring to Keronix's purchase order No. 04963 stating the quantity, price and delivery rate. The quotation stated that it was submitted to Keronix subject to LEC's terms and conditions that are printed on the reverse side of the quotation. Keronix received LEC's quotation.

LEC mailed Keronix a letter on February 25, 1974, acknowledging Keronix's purchase order No. 04963, stating that LEC's purchase order No. 04963 was accepted, and that standard Lockheed terms and conditions applied as on prior orders. The letter was accompanied by an acknowledgement copy of the Keronix purchase order No. 04963, signed by a representative of LEC.

Purchase order No. 04963 was the last in a series of 10 orders for cores. Keronix originally purchased these cores in 1971, and in this first order, and LEC's quotation stated that LEC's conditions applied.

When Keronix placed its first order, LEC responded, "Your order is acceptable to Lockheed in accordance with the terms and conditions of our referred quotation." LEC acknowledged each of Keronix's subse-

---

[1]Unless otherwise indicated, all statutory citations herein are to the California Uniform Commercial Code.

quent orders, including purchase order No. 04963, by a written letter which accepted the purchase order and informed Keronix that LEC's terms and conditions would apply. Keronix never objected to these written statements in LEC's acceptance form.

However, the same purchase order form as used by Keronix in order No. 04963 had been used by Keronix in each of its prior dealings with LEC. Each prior order by Keronix included their own terms and conditions on the reverse side, including the term that expressly limits acceptance to the terms of Keronix's order.

Keronix received delivery on order No. 04963 and on May 8 or 7, 1974, Keronix informed LEC that no further shipments on this order were to be made and to put a hold on the order. Keronix did not mention any defects, but said that they were experiencing component supply problems. In fact, Keronix needed fewer cores and had an inexpensive supply of other cores.

It was not until about four months later that Keronix informed LEC that they would not be using any low drive cores, and Keronix did not mention that the cores were defective.

In a phone call on October 28, 1974, there was no mention of defects and the parties discussed a termination claim. On October 28, 1974, LEC sent a letter entitled, "Subject: Termination claim and requested payment." On November 4, 1974, Keronix refused by letter to make payment and stated nothing about defects. Keronix stated that Keronix's terms and conditions applied to the purchase order and that paragraph 7 states that, "Buyer reserves the right to cancel on written notice this purchase order."

On November 19, LEC sent Keronix a letter stating that the parties had a prior course of dealing making LEC's conditions applicable. In a phone call of December 10, 1974, Keronix's controller never mentioned any defects in the cores.

Keronix's employee, C. Kiss, claimed he complained of mechanical defects to LEC. However, Keresztury, an employee of Keronix, said he did not remember if the conversation had any specifics concerning defects. LEC's employee testified that if there had been any defects they could have cured the problem by immediate replacement, but LEC was never informed that there were any defects.

As of May 1974, Keronix was LEC's only customer for this type of computer core and, as a practical matter, no other market was available to LEC.

Plaintiff Lockheed sued for damages for breach of contract. LEC filed a motion *in limine* to "Preclude Keronix from Relying on Unstated Electrical Defects to Justify Its Rejection at Trial."

Judgment was for plaintiff LEC for $73,778.14 plus interest and costs.

Appellant contends that the trial court erred in concluding that LEC's terms and conditions applied, and that, under section 2207, the trial court should have applied the terms and conditions in Keronix's purchase order No. 04963. Appellant also contends that the trial court erred in granting plaintiff's motion *in limine*, in that subsections (a) and (b) of section 2605, subdivision (1) does not preclude Keronix from presenting evidence on the defects in the cores.[2]

I

■ Defendant's first argument is that the trial court erred in concluding that the terms and conditions of the contract were those of plaintiff and not those contained in defendant's purchase order No. 04963. Both parties agree that the case at bench is governed by the California version of the Uniform Commercial Code, in that the parties are "Merchants under Sect. 2104(1) of that code and the 'cores' are 'goods' as defined in Section 2105(1) of that code."

Appellant argues that, when the case is governed by that code and the offer and acceptance differ in its terms and conditions, the difference is to be resolved by section 2207. Section 2207 reads as follows: "(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

---

[2]Keronix here wishes to rely on paragraph 10 of its terms and conditions in its purchase order. This paragraph provides for warranties of merchantability and fitness.

"(2)  The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

"(a)  The offer expressly limits acceptance to the terms of the offer;

"(b)  They materially alter it; or

"(c)  Notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

"(3)  Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this code."

In the case at bench, "the offer [by Keronix] expressly limits the acceptance to the terms of the offer" and therefore, under subdivision (2)(a) of section 2207, the purported additional terms in LEC's acceptance do not become part of the contract. This express limitation by Keronix of LEC's acceptance to the terms of Keronix's offer can be found in the part of Keronix's purchase order called the "Purchase Order Terms and Conditions," which is located on the reverse side of Keronix's purchase order in a paragraph entitled:

"1.  The Contract Acceptance—Changes and Waiver." On the front of Keronix's purchase order there is a statement that "Instructions on the Reverse Side apply to the Order," drawing attention to Keronix's terms and conditions and the limitations therein.

Paragraph 1 of Keronix's purchase order's terms and conditions reads as follows: "The contract between SELLER and BUYER is embodied in the terms and conditions of this Purchase Order, together with any supplemental documents, specifications, drawings, notes, instructions, engineers notices or technical data referred to herein, BUYER *shall not be bound by this order or the contract unless, and until* SELLER *executes and returns the acknowledgment copy of this order, and no other form of acceptance shall be binding on* BUYER. SELLER. *accepts and shall be bound by the terms of the contract when it executes and*

*returns the acknowledgment copy or by commencing performance here-under. This order expressly limits acceptance to the terms stated herein, and any additional or different terms proposed by the* SELLER *are rejected unless expressly assented to in writing by* BUYER. *No contract shall exist except as herein provided.* The contract sets forth the entire understanding of the parties with respect to the subject matters hereof, and is intended as a complete and exclusive statement of the terms of the agreement between the parties. No waiver or modification of any provision of the contract shall arise or be valid unless made in writing, duly executed by BUYER's properly designated representative, and waiver of any default shall not waive subsequent defaults. Time is of the essence in SELLERS obligations under the contract. Any provisions herein for the delivery of items or the rendering of services by install-ments, shall not be construed as making the obligations of SELLER severable." (Italics added.)

Thus, under the above express terms of Keronix's offer, that order ex-pressly limits acceptance to the terms stated therein, and the additional or different terms proposed by the seller were rejected because they were not expressly assented to in writing by the buyer. And, since Ker-onix's offer expressly limits acceptance to the terms of the offer, under section 2207, subdivision (2)(a) the additional terms by LEC did not become part of the contract between the parties.

The holding of the *Steiner* court in *Steiner* v. *Mobil Oil Corp.* (1977) 20 Cal.3d 90, 94 [141 Cal.Rptr. 157, 569 P.2d 751] is consistent with our holding. The *Steiner* court held that, under section 2207, subdivi-sion (2), "if the terms of the offer and acceptance differ, the terms of the offer become part of a contract between merchants if the offer ex-pressly limits acceptance to its own terms, or if the varying terms of the acceptance materially alter the terms of the offer." We hold that under *Steiner* and section 2207, subdivision (2)(a), Keronix's terms and condi-tions and not LEC's apply.

Section 2207, subdivision (1) is determinative here. Since LEC's ac-ceptance was not "expressly made conditional on assent to additional or different terms," under subdivision (1) of section 2207, LEC's accep-tance operated as an acceptance to the contract even though LEC's acceptance stated terms different from Keronix's offer. Writings ex-changed between the parties do not create a contract where acceptance of a purchase order is expressly conditioned on assent to additional

terms contained in the acceptance (see *Uniroyal, Inc.* v. *Chambers Gasket & Mfg. Co.* (Ind.App. 1978) 380 N.E.2d 571) but here LEC's acceptance was not expressly conditional on an assent to additional terms in LEC's acceptance. Therefore, there was a valid acceptance by LEC.

In summary, by applying subdivision (1) of section 2207, we have before us an offer and an acceptance, even though LEC's acceptance states different terms than Keronix's offer; and, by applying subdivision (2)(a) of section 2207, Keronix's terms and conditions apply, and LEC's terms and conditions in their acceptance are of no effect.

LEC argues that, because of a prior course of conduct, LEC's conditions apply and not Keronix's conditions. LEC points out that their acceptance stated "the Standard Lockheed terms and conditions of sale apply, as on prior orders," and that all prior acceptances by them included LEC's terms and conditions. LEC argues that these statements in their acceptance constitute a prior course of conduct or of prior performance.

LEC relies on sections 1-205(1) and (3) and 2-208(1) of the Commercial Code to support the proposition that a prior course of dealing and prior course of performance of the parties to a contract is relevant to determine the meaning of the agreement. While LEC is certainly correct that a prior course of dealing and performance is relevant in determining the meaning of a contract, there is nothing about the prior course of conduct or prior performance here that would negate the effects of section 2207 and Keronix's limitations of their offer to their own terms. Although LEC repeated in writing in their acceptances that their own terms and conditions applied, and they argue this behavior constituted a relevant "prior course of dealing," Keronix also repeated in each prior order or offer that their offer expressly limited acceptance to the terms of their offer, and therefore Keronix could equally argue that their terms and conditions constituted a "prior course of dealing." Thus, while a prior course of dealing is clearly relevant, nothing about those prior dealings of the parties herein negated the effect of section 2207, subdivision (2)(a).

Plaintiff has cited to us no place in the record, nor have they stated any facts even without citation to the records relating to the prior conduct of the parties, that shows that LEC's terms and conditions actually

applied to the parties' dealings and performance. LEC's mere written attempt to substitute their own terms and conditions for Keronix's by virtue of a written statement in their acceptance to that effect, is insufficient to establish a course of conduct and to negate the effects of section 2207.

Plaintiff relies on *Baumgold Brothers, Inc.* v. *Allan M. Fox Company, East* (N.D.Ohio 1973) 375 F.Supp. 807 for the proposition that, if a purportedly new term appearing in the acceptance is consistent with a prior course of dealing between the parties, the term does not represent an alteration of the offer and it becomes part of it. *Baumgold* is of no help to LEC. As we have said above, plaintiff LEC has not shown this court how their terms and conditions were utilized in prior performances or were utilized in prior courses of dealings.

LEC argues that (a) Keronix "acquiesced" in their conditions and (b) Keronix never objected to them. Although acquiescence is relevant in determining the meaning of the agreement (§ 2208, subd. (1)) Keronix never acquiesced to those conditions. Under section 2207, subdivisions (1) and (2) the offeror has control over the offer, and mere nonobjection is not acquiescence, since no objection is required. Although the court was correct that defendant never objected to LEC's attempts to substitute their terms and conditions in the contract, the language of section 2207 does not require that the offeror make such an objection. Section 2207, subdivision (2)(a) resolves the contest between the offeror and offeree in favor of the offeror.

## II

■ Thus, since Keronix's terms and conditions applied, under the terms of Keronix's purchase order terms and conditions, appellant would have been entitled to raise the issue of breach of warranty. However, for reasons we will explain below, Keronix is barred by section 2605 from relying on unstated defects in the cores that were delivered. And since Keronix may not rely on unstated defects, it follows that Keronix is unable to raise the issue of breach of warranty which would be based on those defects.

Plaintiff's motion *in limine* (based on § 2605, subd. (1)), which sought to preclude defendant from introducing any evidence of electrical defects in the cores at trial was properly granted.

Section 2605 reads as follows: "(1) The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach.

"(a)  Where the seller could have cured it if stated seasonably; or

"(b)  Between merchants when the seller has after rejection made a request in writing for a full and final written statement of all defects on which the buyer proposes to rely.

"(2)  Payment against documents made without reservation of rights precludes recovery of the payment for defects apparent on the face of the documents."

Appellant argues, and we agree, that section 2605, subdivision (1)(b) was not satisfied because there was no request "in writing" for a full and final statement of all defects on which the buyer proposed to rely. None of the letters relied on by respondent constitute such a written request within the meaning of section 2605, subdivision (1)(b). It has been held that where the buyer sent a detailed letter of termination and does not mention defects as a reason, failure to particularize defects acts as a waiver of a right to claim a breach for defective goods. (*Koppers Co., Inc. v. Brunswick Corporation* (1973) 224 Pa.Super. 250 [303 A.2d 32].)

However, section 2605, subdivision (1)(a) did bar Keronix from relying on defects since plaintiff could have remedied the defects if they had been put on notice of them. Section 2605, subdivision (1)(a) bars the buyer from relying on an unstated defect ascertainable by reasonable inspection where the seller could have cured it. In the case at bar defects could have been ascertained from inspection, the seller could have sent other cores, and Keronix is precluded from relying on the unstated defects to justify their breach by their failure to point out the defects (mechanical or electrical) to LEC.[3]

Since Keronix cannot rely on unstated defects (§ 2605), they are unable to rely on their terms and conditions relating to breach of warranty

---

[3]Keronix attempts to distinguish their right to rely on mechanical defects from their right to rely on electrical defects. There is evidence from which the trial court can conclude that Keronix never informed LEC of either type of defect.

to justify their breach, and we have before this court a case where the buyer (Keronix) has in effect cancelled its contract without cause or justification. Keronix's terms and conditions, though applicable, are of no avail to Keronix, insofar as Keronix is relying on their terms and conditions requiring warranties of fitness and merchantability.

## III

■ However, Keronix's terms and conditions also provide for calculation of the seller's damages where the buyer has cancelled without cause and it is that section of Keronix's terms and conditions that is relevant here. Since Keronix cannot rely on a breach of warranty (due to their failure to inform LEC of defects), their breach is unjustified, and Keronix's terms and conditions dealing with unjustified breach, become the applicable terms and conditions.

Keronix's terms and conditions state that damage of the seller upon buyer's cancellation without cause shall be calculated pursuant to Armed Services Procurement Regulations (ASPR) section 8-706. Thus, we have at bar a case involving such a cancellation without cause with damages to be calculated by ASPR section 8-706.

The pertinent paragraphs of the regulation read as follows: "[T]he buyer shall pay to the seller...for completed supplies or services accepted by the buyer...and not therefore paid for, forthwith a sum equivalent to the aggregate price for such supplies or services computed in accordance with the price or prices specified in the contract." (ASPR § 8-706(e)(i).)

"The buyer shall pay to the seller...the total of (A) the cost of such work, including initial costs and preparatory expenses allocable thereto ...and...(C) a sum, as profit on (A) above...to be fair and reasonable." (ASPR § 8-706(e)(iii)(A)(C).)

"[I]f the termination hereunder be partial, the seller may file with the buyer a claim for an equitable adjustment in the price or prices specified in the contract for the work in connection with the continued portion not terminated by the notice of termination, and an appropriate equitable adjustment *shall* be made in price or prices." (Italics in original.) (ASPR § 8-706(g).)

We agree with the trial court that, under these terms and conditions, LEC is entitled to damages and Keronix must pay for those cores delivered or ready for delivery prior to cancellation. However, under these terms and conditions LEC is not entitled to anticipated profits on the unperformed portion of the contract.

The record before us does not permit a calculation of the amount of damages to which we find LEC to be entitled. The case must be remanded for that limited purpose.

The judgment is reversed and the case is remanded to the trial court for the limited purpose of calculating respondent's damages in conformity with this opinion. Neither party shall recover costs in this court.

Files, P. J., and McClosky, J., concurred.

A petition for a rehearing was denied January 22, 1981.